## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Liberty Mutual Fire Insurance Company, LM Insurance Corporation, LM General Insurance Corporation, The First Liberty Insurance Corporation, Safeco Insurance Company of Indiana, and Safeco Insurance Company of Illinois, | |
| Plaintiffs, | **COMPLAINT** **(JURY TRIAL DEMANDED)** |
| v. | |
| Acute Care Chiropractic Clinic P.A., Arthur Guzhagin D.C., Healthy Living Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., Najah Ibrahim, Southwest Management LLC, and St. Paul Wellness Clinic P.A., | |
| Defendants. | |

Plaintiffs Liberty Mutual Fire Insurance Company, LM Insurance Corporation, LM General Insurance Corporation, The First Liberty Insurance Corporation, Safeco Insurance Company of Indiana, and Safeco Insurance Company of Illinois (hereinafter, "Liberty Mutual") for their Complaint against Defendants Acute Care Chiropractic Clinic P.A., Healthy Living Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., and St. Paul Wellness Clinic P.A. (hereinafter, "Defendant Clinics"); Arthur Guzhagin D.C. and Najah Ibrahim (hereinafter, "Defendant Principals"); and Southwest Management LLC herein states and alleges as follows:

## **INTRODUCTION**

1.      The State of Minnesota enacted legislation in 1974 to obtain orderly and efficient administration of justice within the state due to the detrimental impact of automobile accidents on uncompensated injured persons. This legislation is known as the Minnesota No-Fault Automobile Insurance Act, referred to hereafter as the "No-Fault Act."  The purposes behind enacting the No-Fault Act are to relieve the severe economic distress of uncompensated accident victims; to prevent overcompensation of accident victims; to encourage appropriate medical and rehabilitative treatment of the accident victims, to speed the administration of justice and to correct imbalances and abuses in the operation of the automobile accident tort liability system.  MINN. STAT. § 65B.42.

2.      The No-Fault Act requires payment of specified basic economic loss benefits to victims of automobile accidents without regard to fault for the accident in the minimum amount of $20,000 in medical expense benefits and $20,000 in income loss benefits and replacement services with the option to stack those benefits for owners of multiple vehicles.

3.      The benefits are primarily provided to either a named insured under the policy of insurance or resident relative of the named insured that has been involved in a motor vehicle accident that resulted in injury within the State of Minnesota.  If an injured person was occupying a motor vehicle involved in the automobile accident but is not an insured under any policy of insurance then No-Fault benefits are paid by the insurance company providing security for the involved vehicle. An individual who is

injured as a result of a motor vehicle accident that seeks medical treatment for the injury is then required to submit an Application for No-Fault Benefits with the primary insurance company.

4.    The Liberty Mutual companies are insurance carriers that do business in the State of Minnesota and issue Minnesota residents policies that conform to the Minnesota No-Fault Automobile Insurance Act.  *See* MINN. STAT. § 65B *et. seq.*

5.    Minnesota Supreme Court has recognized the Corporate Practice of Medicine Doctrine which prohibits chiropractic clinics from being owned in whole or part by unlicensed laypersons. *See, e.g., Isles Wellness Inc. v. Progressive N. Ins. Co.*, 725 N.W.2d 90, 95 (Minn. 2006) *(Isles II)*; *Isles Wellness Inc. v. Progressive N. Ins. Co.*, 703 N.W.2d 513, 517 (Minn. 2005) *(Isles I)*; *Granger v. Adson*, 190 Minn. 23 (1933).

6.    This action seeks a judicial determination that over $834,060.22 in allegedly rendered services were billed to Liberty Mutual illegally, unlawfully, and knowingly in violation of Minnesota's common law prohibition on the corporate practice of medicine by the Defendant Clinics.  Liberty Mutual also seeks to recover an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) for amounts paid to the Defendant Clinics.

7.    The Defendant Clinics operate in violation of the Corporate Practice of Medicine Doctrine by existing and operating in a state in which unlicensed individuals, such as Najah Ibrahim and Southwest Management LLC, finance clinic operations, receive money in exchange for steering new patients to the clinics, and maintain legal ownership or secret ownership-in-fact over the clinic.

8.    Through this illegal scheme, the Defendants have stolen and/or attempted to steal more than $800,000.00 from Liberty Mutual.  In addition to seeking to recover amounts paid, Liberty Mutual seeks a declaration that it is not legally obligated to pay reimbursement of any amounts billed but not paid.

## PARTIES

9.    Plaintiff Liberty Mutual Fire Insurance Company is a Wisconsin corporation with its principal place of business at 175 Berkeley Street, Boston, MA 02117.  Liberty Mutual Fire Insurance Company is licensed to issue Minnesota No-Fault Automobile Insurance policies within Minnesota.

10.   Plaintiff LM Insurance Corporation is an Illinois corporation with its principal place of business at 175 Berkeley Street, Boston, MA 02117.  LM Insurance Corporation is licensed to issue Minnesota No-Fault Automobile Insurance policies within Minnesota.

11.   Plaintiff LM General Insurance Corporation is an Illinois corporation with its principal place of business at 175 Berkeley Street, Boston, MA 02117.  LM General Insurance Corporation is licensed to issue Minnesota No-Fault Automobile Insurance policies within Minnesota.

12.   Plaintiff The First Liberty Insurance Corporation is an Illinois corporation with its principal place of business at 175 Berkeley Street, Boston, MA 02117.  The First Liberty Insurance Corporation is licensed to issue Minnesota No-Fault Automobile Insurance policies within Minnesota.

13.   Plaintiff Safeco Insurance Company of Indiana is an Indiana corporation with its principal place of business at 175 Berkeley Street, Boston, MA 02117.   Safeco Insurance Company of Indiana is licensed to issue Minnesota No-Fault Automobile Insurance policies within Minnesota.

14.   Plaintiff Safeco Insurance Company of Illinois is an Illinois corporation with its principal place of business at 175 Berkeley Street, Boston, MA 02117.   Safeco Insurance Company of Illinois is licensed to issue Minnesota No-Fault Automobile Insurance policies within Minnesota.

15.   Defendant Acute Care Chiropractic Clinic P.A.   (hereinafter, "Acute Care") is a Minnesota professional association incorporated under Minnesota Statutes section 302A.  Acute Care has elected to be governed under the Minnesota Professional Firms Act.  *See* MINN. STAT. CH. 319B.   Defendant Arthur Guzhagin was the incorporator for Acute Care Chiropractic and is presently the registered agent for the clinic.

16.   Defendant Arthur Guzhagin (hereinafter, "Guzhagin") is a citizen of the State of Minnesota and was last known to reside at 5000 Hooper Lake Road, Deephaven, Minnesota 55331.   Guzhagin is a licensed chiropractor in the State of Minnesota.   He first obtained his chiropractic license in the state on February 1, 2006.   He also obtained an acupuncture license on April 6, 2006, which expired on September 15, 2009.  Guzhagin serves as the paper owner of the Defendant Clinics.

17.   Defendant Healthy Living Chiropractic Clinic P.C. (hereinafter, "Healthy Living") is a Minnesota professional corporation incorporated under Minnesota Statutes section 319B.  Healthy Living has elected to be governed under the Minnesota Professional

Firms Act.  *See* MINN. STAT. CH. 319B.  Guzhagin was the incorporator for Healthy Living and is presently the registered agent for the clinic.

18. Defendant Lake Nicollet Clinic P.A. (hereinafter, "Lake Nicollet") is a Minnesota professional corporation incorporated under Minnesota Statutes section 319B.  Lake Nicollet has elected to be governed under the Minnesota Professional Firms Act.  *See* MINN. STAT. CH. 319B.  Guzhagin was the incorporator for Lake Nicollet and is presently the registered agent for the clinic.

19. Defendant Najah Ibrahim (hereinafter, "Ibrahim") is a citizen of the State of Minnesota and resides at 1764 Riverside Drive, Shakopee, MN 55379.  Ibrahim is not licensed to practice medicine or chiropractic in any state.  Ibrahim steers patients to the Defendant Clinics and is paid by the Defendant Clinics for, *inter alia*, retaining runners, cappers, and/or steerers, such as Abdinasir Mayon Abikar, and for steering new patients to the Defendant Clinics with knowledge that Minnesota No-Fault claims would be submitted by U.S. Mail and other interstate methods to insurers, including Plaintiffs.

20. Defendant Southwest Management LLC (hereinafter, "Southwest Management") is a Minnesota limited liability company.  Southwest Management's principal place of business is 1764 Riverside Drive, Shakopee, MN 55379.  Upon information and belief, Southwest Management's sole member is Ibrahim.

21. Defendant St. Paul Wellness Clinic P.A (hereinafter, "St. Paul Wellness") is a Minnesota professional corporation incorporated under Minnesota Statutes section 319B.  St. Paul Wellness has elected to be governed under the Minnesota Professional

6

Firms Act.  *See* MINN. STAT. CH. 319B.  Guzhagin was the incorporator for St. Paul

Wellness and is presently the registered agent for the clinic.

## VENUE

22.  This judicial district is the proper venue for this civil action because all of the

defendants are residents in the state in which this district is located and a substantial

part of the events or omissions giving rise to the claim occurred within this judicial

district.  *See* 28 U.S.C. § 1391(b)(1)-(2).


## JURISDICTION

23.  This Court has jurisdiction over the subject matter of this action under 28 U.S.C.

§1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000.00,

exclusive of interest and costs, and is between citizens of different states.  Pursuant to

28 U.S.C. § 1331, this Court also has jurisdiction over the claims brought under 18

U.S.C. § 1961 <u>et seq</u>. (the Racketeer Influenced and Corrupt Organizations Act

("RICO")) because they arise under the laws of the United States.  .

24.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to

any claim in which the minimum amount in controversy is not satisfied, as set forth in

Exhibit A, because there is complete diversity between Plaintiffs and all Defendants

and the amount in controversy requirement is satisfied with respect to at least one

Plaintiff and each Defendant.  *See* 28 U.S.C. §§ 1332(a)(1), 1367.  *Exxon Mobil Corp. v.*

*Allapattah Serv., Inc.*, 545 U.S. 546 (2005).

## LAY OWNERSHIP OF DEFENDANT CLINICS

25.   The Defendant Clinics represent to the public that they are separately incorporated and separately managed.  Upon information and belief, Defendant Clinics are operated in a consolidated fashion with profit influencing and directing patient care.  Defendant Clinics commingle funds between their various financial accounts, operate in an underfunded fashion and pay expenses for one clinic from another clinic's operating account, use same or similar electronic patient care record systems, grant direct and indirect access to confidential patient care records to chiropractors working at other Defendant Clinics, and recruit staff chiropractors to service other Defendant Clinics besides their primary clinic.  Guzhagin is the paper owner of the Defendant Clinics and influences staff chiropractors and practice relief chiropractors to maintain excessive treatment regimens and schedules and to make unnecessary referrals despite the staff chiropractors and practice relief chiropractors concluding that the treatment was not necessary care.  Ibrahim is either a legal owner or an owner-in-fact and is responsible for organizing individuals to serve as runners for the business.  Ibrahim finances clinic operations in whole or part and has certain management authority.

26.   The Defendant Clinics are partially or wholly funded and/or owned by Southwest Management and Ibrahim.  Plaintiffs discovered that Southwest Management and Ibrahim are partially or wholly funding the Defendant Clinics by and through an affidavit provided by a confidential informant establishing payments made by Southwest Management to the confidential informant for professional chiropractic services rendered at St. Paul Wellness Clinic.  Ibrahim and/or Southwest Management

is an established "marketer" or runner having operated services such as 1-800-PAIN-TEAM and promotes the Defendant Clinics by bringing new patients to the Defendant Clinics for treatment after motor vehicle accidents. The chiropractors working at the clinics are told that Ibrahim is a friend of Guzhagin. Ibrahim is granted access to office space at the Defendant Clinics and is considered by the Confidential Informants to have influence on the management and operation of the clinics.

27.  Ibrahim and/or Southwest Management recruit and employ "marketers" and/or "runners" who directly and/or indirectly solicit individuals who have been in motor vehicle accidents to obtain treatment at the Defendant Clinics. One example of such a prospective employee is Abdinasir Mayon Abikar who reported to Officer Charles Greaves of the Minneapolis Police Department that he had discussed working for Ibrahim's business which was cheating insurance companies out of money.

28.  Minnesota law prohibits Defendant Clinics from employing a runner, capper, or steerer, which is defined as "a person who for a pecuniary gain directly procures or solicits prospective patients through telephonic, electronic, or written communication, or in-person contact, at the direction of, or in cooperation with, a health care provider when the person knows or has reason to know that the provider's purpose is to perform or obtain services or benefits under or relating to a contract of motor vehicle insurance." MINN. STAT. § 609.612 (2013).

29.  Upon information and belief, Guzhagin and/or Defendant Clinics pay Ibrahim, Southwest Management LLC and/or other runners, cappers, steerers in cash. This is based upon the fact that Guzhagin has a history of carrying large sums of cash in clinic

despite the fact that the Defendant Clinics are operated in check-based transactions with insurers such as Plaintiff.  On October 7, 2008, Guzhagin was in possession of $5,000.00 in cash in a bank bag in his clinic located at 1501 LaSalle Avenue, Minneapolis, MN 55403.   At approximately 12:15 p.m., the Minneapolis Police Department was dispatched to Guzhagin's location after an armed robbery was reported.  The Minneapolis Police Department was advised by Guzhagin and others that four armed men came into the clinic and shot Guzhagin in the head with a BB gun.  One of the gunmen entered the clinic in a "Scream" Halloween Mask.  Guzhagin told the Minneapolis Police Department that the four men entered the clinic as he was sitting in his office.  They ordered him to give up the money and threatened to kill him if he did not comply.  Guzhagin obtained the $5,000.00 in the bank bag and gave it to the gunmen.  Guzhagin was then handcuffed with small plastic zip ties.

30.   The Minneapolis Police Department also identified Mahammad Jalizade as an employee of the Guzhagin.  Mahammad Jalizade is also known as Mike Jalizade who now works as a "paralegal" for the Gorshteyn Law Firm P.C., which is located at 2700 E. Lake Street, Suite 3300, Minneapolis, MN 55406.

31.   On March 3, 2009, at approximately 7:43 p.m., Ibrahim was stopped by Officer Kenneth Tidgwell of the Minneapolis Police Department for a traffic violation. Officer Tidgwell found that Ibrahim was operating a 2009 Land Rover Range Rover Supercharge which was owned by A1 Mobile Diagnostic Services in Hollywood, Florida.  A1 Mobile Diagnostic Services was owned and/or operated by Angel Soto. Angel Soto was an owner of Minnesota Radiology which employed Guzhagin's then-

wife, Angelica Guzhagin.  Minnesota Radiology was a large recipient of patients from the Defendant Clinics.  According to Angela Schultz D.C., Minnesota Radiology would pay referring clinics a "marketing fee" of $300.00 for each referral.  To receive the money, the referring provider and/or clinic would establish a Delaware marketing company.  The referring providers were told by Minnesota Attorney Matthew Landau to establish a Delaware marketing company so that ownership could not be traced.

32. On July 23, 2010, at approximately 4:01 p.m., Officer Charles Greaves of the Minneapolis Police Department responded to Midwest Chiropractic for an altercation between Ibrahim and Abdinasir Mayon Abikar.  The dispute arose when Ibrahim was dropping off a patient at Midwest Chiropractic and he was confronted by Abikar.  The dispute pertained to Ibrahim refusing to hire Abikar to work as a runner for or on behalf of the Defendant Clinics after Abikar confronted Ibrahim about cheating insurance companies out of money.

33. Defendant Clinics attempt to treat accident victims regardless of injury status. On October 8, 2010, at approximately 6:30 p.m., Officer David Garman of the Minneapolis Police Department responded to Midwest Chiropractic for an alleged assault by one of the chiropractors.  The patient went to Midwest Chiropractic after an accident on the recommendation of Hiyam Rashid, the patient's cousin, who had encouraged her to make a false claim regarding the accident.  According to the police report, which redacts the patient's name, when the patient went to Midwest Chiropractic, the chiropractor deliberately tried to injure her neck for her so that an insurance claim could be made.  Plaintiffs have also obtained independent medical

reviews of numerous claims which revealed that patients were being treated unnecessarily and/or without objective evidence of injury.

34. On May 14, 2013, Plaintiffs received information from Confidential Informant 1 (hereinafter, "CI-1"). CI-1 stated that he had worked at Healthy Living Chiropractic. He stated that he knew Ibrahim had worked as a "marketer" for Healthy Living Chiropractic.

35. On July 27, 2013, Plaintiffs received information from Confidential Informant 2 (hereinafter, "CI-2"). CI-2 stated that she had worked at Midwest Chiropractic and Lake Nicollet Clinic in approximately 2011. Guzhagin would attempt to influence her treatment recommendations by making comments to her about the treatment that she had rendered without ever personally treating the patient. CI-2 recalls that on one occasion, Guzhagin asked CI-2 to perform a patient re-exam and make a patient referral to a diagnostic facility. CI-2 found this unusual as the patient was being seen by the regular chiropractor on the following day. CI-2 refused to perform the re-exam and make the referral. In response, Guzhagin became angry.

36. On September 23, 2013, Plaintiffs received information from Confidential Informant 3 (hereinafter, "CI-3"). CI-3 met Guzhagin after responding to an advertisement on the Northwest Health Sciences University Alumni Resources publication. CI-3 began working as a practice relief physician at Healthy Living, Midwest Chiropractic, and St. Paul Wellness at various times between 2009 and 2012. In 2012, CI-3's role was to work as a full time physician but CI-3 was not hired as an employee. CI-3 believed that Ibrahim was an employee of Healthy Living and would use offices and interpret

occasionally.   In 2012, CI-3 was paid for professional services by St. Paul Wellness, Southwest Management, Healthy Living, and Midwest Chiropractic for professional chiropractic services actually rendered at the St. Paul Wellness location and despite not having worked for Southwest Management, Healthy Living or Midwest Chiropractic. CI-3 also disclosed to Plaintiffs that Guzhagin would have discussions with chiropractors when he noticed that certain modalities were not being rendered to patients.   CI-3 stated that Guzhagin would tell CI-3 how he wanted patient treatment to be rendered even though Guzhagin had not seen the patient.

37.   Brooke Giles is a licensed chiropractor in the State of Minnesota.   On November 22, 2013, Giles provided deposition testimony in the matter of *Ali v. Safeco Insurance Company* wherein she discussed the ownership structure of Acute Care, Midwest Chiropractic, and Lake Nicollet.   Giles confirmed that these three clinics were "one in the same."   Giles also confirmed that she has access to health care records at the other facilities upon request.   Giles confirmed that Guzhagin would question chiropractors about why they did not perform certain treatment modalities.   Giles also confirmed that Ibrahim was a friend of Guzhagin and would refer patients to the clinics.   Giles routinely administered four passive treatment modalities to patients plus a chiropractic manipulation to her automobile accident patients regardless of the subjective symptomology of her patients at the Defendant Clinics.

38.   On February 20, 2014, Plaintiffs received information from Confidential Informant 4 (hereinafter, "CI-4").   CI-4 stated that he had worked a few times at Acute Care

Chiropractic as a practice relief physician.  He states that he never received an IRS-1099 from Acute Care and was paid by Giles out of her personal checking account.

39.  Southwest Management is a lay company and is owned by layperson Ibrahim.

40.  Southwest Management and Ibrahim were owners in whole or part legally or in-fact of Defendant Clinics and were responsible for paying licensed chiropractors for services rendered as evidenced by the fact that Southwest Management did, in fact, issue payments and an IRS-1099 to CI-3 for professional services rendered at St. Paul Wellness.

41.  Acute Care Chiropractic, Healthy Living, Lake Nicollet, Midwest Chiropractic, and St. Paul Wellness are operated in an underfunded fashion and money is syphoned from the businesses.  This is evidenced in part by the fact that the Defendant Clinics do not pay practice relief physicians for services rendered.  The Defendant Clinics require that employee chiropractors pay practice relief physicians from their personal financial accounts.  This is also evidenced by the fact that CI-3 was paid by numerous other clinics operated by Guzhagin and Ibrahim and by Southwest Management despite the fact that CI-3 never worked at these facilities.

42.  Treatment rendered at Acute Care, Healthy Living, Lake Nicollet, Midwest Chiropractic Clinic, and St. Paul Wellness was influenced by Guzhagin and/or others for business purposes including maximizing amounts billed to no-fault insurers, including Plaintiffs.

43.  Defendant Clinics submit patient bills to Plaintiffs on HCFA-1500 forms.  The HCFA-1500 Form states, *inter alia*, "**NOTICE:   Any person who knowingly files a**

**statement of claim containing any misrepresentation or any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties.**" In submitting the HCFA-1500 form to Plaintiffs, the Defendant Clinics are affirming that (1) the services on the form were medical indicated and necessary for the health of the patient; (2) the services were personally furnished by that medical provider or by a qualified employee under the medical provider's personal direction; and (3) the medical provider was authorized to perform such services.

44. The HCFA-1500 Forms and other supporting documentation are sent to Plaintiffs via United States Mail and/or facsimile.

45. Arthur Guzhagin has been involved in other schemes to knowingly and intentionally violate the corporate practice of medicine doctrine. In August 2009, Guzhagin was introduced to David K. Dodson M.D., who is a medical graduate of Ross University in the Dominican Republic and who is not board certified, by Alex Gitterman D.C. at the Healthy Living Chiropractic Clinic. Guzhagin assisted Dr. Dodson by *inter alia* "loaning money" to start up Dodson's clinic; by paying the Minnesota Secretary of State incorporation fees; opening bank accounts for business operations unbeknownst to Dodson; paid Dodson $1,000 per week between September 18, 2009, and October 23, 2009. Upon indicating his willingness to reveal this information, Dr. Dodson received a telephone call from "a male with a Somali accent informing me that I 'was a dead man." Dr. Dodson now operates a clinic at 810 N. Lilac Drive, Golden Valley, MN 55422, which is the same address as Stand Up Mid America (SUMA) MRI.

15

**COUNT I**
**Racketeer Influenced and Corrupt Organizations Act**
**18 U.S.C. § 1961 *et. seq.***
(All Defendants)

46.   Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs
      1 through 45 of the Complaint.

47.   At all times material, Plaintiffs Liberty Mutual Fire Insurance Company, LM Insurance
      Corporation, LM General Insurance Corporation, The First Liberty Insurance
      Corporation, Safeco Insurance Company of Indiana, and Safeco Insurance Company
      of Illinois were "persons" within the meaning and definition of 18 U.S.C. §§ 1961(3),
      1964(c).

48.   Plaintiffs have standing to bring an action under RICO because a direct relationship
      exists between the damages set forth herein and Defendants' conduct.  Plaintiffs were
      the intended target of Defendants' injurious conduct which is described herein.

49.   At all times material, Defendants Acute Care Chiropractic Clinic P.A., Arthur
      Guzhagin, Healthy Living Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest
      Chiropractic Clinic P.C., Najah Ibrahim, Southwest Management LLC, and St. Paul
      Wellness Clinic P.A. were "persons" within the meaning and definition of 18 U.S.C. §§
      1961(3), and 1962(c).

50.   Defendants Acute Care Chiropractic Clinic P.A., Arthur Guzhagin, Healthy Living
      Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C.,
      Najah Ibrahim, Southwest Management LLC, and St. Paul Wellness Clinic P.A. formed
      an ongoing association for purposes of defrauding the Plaintiffs and its insureds of

16

available no-fault medical expense benefits and/or medical payment ("med pay") benefits.

51.    Defendants Acute Care Chiropractic Clinic P.A., Arthur Guzhagin, Healthy Living Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., Najah Ibrahim, Southwest Management LLC, and St. Paul Wellness Clinic P.A. operate as an ongoing organization.

52.    Defendants Arthur Guzhagin and Najah Ibrahim are responsible for the operation and/or management of Acute Care Chiropractic Clinic P.A., Healthy Living Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., Southwest Management LLC, and St. Paul Wellness Clinic P.A.

53.    Defendants Acute Care Chiropractic Clinic P.A., Arthur Guzhagin, Healthy Living Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., Najah Ibrahim, Southwest Management LLC, and St. Paul Wellness Clinic P.A. are an enterprise within the meaning of 18 U.S.C. § 1961(4) because these entities are corporations associated-in-fact and have colluded to submit illegal and unlawful charges to insurance carriers, including Plaintiffs, throughout the United States. Said entities and individuals had actual and/or constructive knowledge of the existence of the corporate practice of medicine doctrine in the State of Minnesota. *See Guzhagin v. State Farm Mut. Auto. Ins. Co.*, 566 F. Supp.2d 962 (D. Minn. 2008). *See also Auto Club Ins. Ass'n. et. al. v. Healthy Living Chiropractic Clinic, P.C. et. al* (11-CV-27-JRT/JSM) Said entities knew that Acute Care Chiropractic Clinic P.A., Healthy Living Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., Southwest

17

Management LLC, and St. Paul Wellness Clinic P.A. were legally owned or owned-in-fact in whole or part by lay persons, such as Najah Ibrahim.

54. Plaintiffs are the victim of said enterprise.

55. At all times relevant the aforementioned enterprise was engaged in interstate commerce, or in activities which affect interstate commerce pursuant to 18 U.S.C §§ 1961(4) and 1962(c) by the submission of insurance claims to insurers outside the State of Minnesota, by rendering treatment to non-Minnesota citizens, and by utilizing products and devices acquired from out-of-state suppliers. Said conduct is also prohibited by Minnesota Statutes section 609.611, subdivision 1(a)(2), which prohibits the presentation of an insurance claim, with intent to defraud, to an insurer that conceals a material fact concerning the substance of a claim.

56. Defendants Acute Care Chiropractic Clinic P.A., Arthur Guzhagin, Healthy Living Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., Najah Ibrahim, Southwest Management LLC, and St. Paul Wellness Clinic P.A. engaged in racketeering activity by submitting the charges set forth in Exhibit A for services to Plaintiffs when Defendants knew and should have known that Acute Care Chiropractic Clinic P.A., Healthy Living Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., Southwest Management LLC, and St. Paul Wellness Clinic P.A. were operating illegally and in violation of the corporate practice of medicine doctrine in the State of Minnesota.

57. Defendants intended to defraud Plaintiffs as evidenced through their knowing submissions of illegal and unlawful charges to Plaintiffs for payment.

58. Defendants have had actual knowledge of the issue of corporate practice of medicine since at least 2008 when the issue was mentioned by Guzhagin in *Guzhagin v. State Farm Mut. Auto. Ins. Co.* 566 F. Supp.2d 962 (D. Minn. 2008). *See also Auto Club Ins. Ass'n. et. al. v. Healthy Living Chiropractic Clinic, P.C. et. al* (11-CV-27-JRT/JSM).

59. Guzhagin has had actual or constructive knowledge of the Corporate Practice of Medicine Doctrine at all times material based upon the Minnesota Board of Chiropractic Examiners notice indicating that as of January 1, 1999, all owners and decision makers of professional firms must be comprised of persons licensed to practice the professions designated in Minnesota chapter 319B.

60. Mail fraud is a predicate offense under the RICO statute which prohibits "devising … any scheme … for obtaining money or property by means of false or fraudulent pretenses, representations … for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service ….." 18 U.S.C. § 1341. Said conduct is also prohibited by Minnesota Statutes section 609.611, subdivision 1(a)(2), which prohibits the presentation of an insurance claim, with intent to defraud, to an insurer that conceals a material fact concerning the substance of a claim.

61. Defendants' conduct constitutes mail fraud because billing representatives from Defendants' businesses submitted HCFA-1500 forms and/or billing invoices via U.S. Postal Service to Plaintiffs for the purpose of obtaining money under the false pretense that Acute Care Chiropractic Clinic P.A., Healthy Living Chiropractic Clinic P.C., Lake

Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., and St. Paul Wellness Clinic P.A. were properly incorporated, properly owned, and legally authorized to render treatment in the State of Minnesota. These false representations are based upon Guzhagin's express written representation in an undated letter to Michael Struebing of Liberty Mutual Insurance Company received on July 11, 2013, that, "I am the sole owner of the clinics. You also asked whether the facilities work in conjunction with one another or are operated separately. The clinics are operated separately." These representations explicitly and implicitly are also based upon the medical reports and HCFA-1500 billing forms submitted to Plaintiffs, which fail to indicate and conceal that Acute Care Chiropractic Clinic P.A., Healthy Living Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., and St. Paul Wellness Clinic P.A. are, in fact, owned by laypersons and other companies. These communications involved interstate commerce because Plaintiffs' principal places of business in Massachusetts and operates claims offices throughout the country.

62. Wire fraud is a predicate offense under the RICO statute which prohibits "devis[ing] any scheme or artifice .. for obtaining money … by means of false or fraudulent pretenses, representations ... or causes  to be transmitted by means of wire … communication in interstate … commerce … any writings … for the purpose of executing such scheme…."  18 U.S.C. § 1343.

63. Defendants' conduct constitutes wire fraud because billing representatives from Defendants' businesses submitted HCFA-1500 forms and/or billing invoices via wire to Plaintiffs for the purpose of obtaining money under the false pretense that Acute

Care Chiropractic Clinic P.A., Healthy Living Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., and St. Paul Wellness Clinic P.A. were properly incorporated, properly owned, and legally authorized to transact business in the State of Minnesota. These false representations in an undated letter to Michael Struebing of Liberty Mutual Insurance Company received on July 11, 2013, are based upon Guzhagin's express written representation that, "I am the sole owner of the clinics. You also asked whether the facilities work in conjunction with one another or are operated separately. The clinics are operated separately." These representations explicitly and implicitly are also based upon the medical reports and HCFA-1500 billing forms submitted to Plaintiffs, which fail to indicate and conceal that Acute Care Chiropractic Clinic P.A., Healthy Living Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., and St. Paul Wellness Clinic P.A. are, in fact, owned by laypersons and other companies. These communications involved interstate commerce because Plaintiffs' principal places of business in Massachusetts and operates claims offices throughout the country.

64. Defendants' submission of false and unlawful charges to Plaintiffs evidences that Plaintiffs were the intended target of Defendants' unlawful conduct. The damages to Plaintiff were foreseeable, concrete, and not subject to speculation.

65. The illegal and unlawful submissions have been submitted to Plaintiffs for a period in excess of one year and constitute a pattern of racketeering activity.

66. At all times relevant herein, Plaintiffs reasonably relied upon representations of past and/or present material fact made by Defendants to the Plaintiff's detriment.

67. Plaintiffs have been damaged in an amount in excess of Seventy Five Thousand Dollars ($75,000.00), which is set forth with particularity in Exhibit A.

68. Plaintiff hereby demands treble damages pursuant to 18 U.S.C. § 1964(c).

**COUNT II**
**Declaratory Judgment Act – 28 U.S.C § 2201**
Violation of Minnesota's Corporate Practice of Medicine Doctrine
(All Defendants)

69. Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 68 of the Complaint.

70. A real, actual and justiciable controversy exists between the parties. This Court has the jurisdiction to declare the rights and obligations of the parties pursuant to 28 U.S.C. § 2201.

71. Healthcare facilities, such as Defendants Acute Care Chiropractic Clinic P.A., Healthy Living Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., and St. Paul Wellness Clinic P.A. are required to be owned in whole by licensed physicians and healthcare providers under the laws of the State of Minnesota. *See, e.g., Isles Wellness Inc. v. Progressive N. Ins. Co.*, 725 N.W.2d 90, 95 (Minn. 2006) (*Isles II*); *Isles Wellness Inc. v. Progressive N. Ins. Co.*, 703 N.W.2d 513, 517 (Minn. 2005) (*Isles I*); *Granger v. Adson*, 190 Minn. 23 (1933).

72. Defendants Acute Care Chiropractic Clinic P.A., Healthy Living Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., and St. Paul Wellness Clinic P.A. employs and/or represents to the public that it has physicians and healthcare providers available to perform services on behalf of its patients. Defendants and these physicians and healthcare providers engage in the practice of medicine and

22

"practice of healing" by engaging in, or holding out to the public as being engaged in the diagnosis, analysis, treatment, correction and cure of physical injuries and ailments.

73. As health care providers and physicians, the chiropractors of Defendants Acute Care Chiropractic Clinic P.A., Healthy Living Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., and St. Paul Wellness Clinic P.A. should enjoy unfettered independent medical judgment without the interference of a lay corporation.

74. Defendants Acute Care Chiropractic Clinic P.A., Healthy Living Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., Southwest Management LLC, and St. Paul Wellness Clinic P.A. operate in violation of the Corporate Practice of Medicine Doctrine in the State of Minnesota. This violation is knowing and intentional. Guzhagin knew of and made specific reference to the corporate practice of medicine doctrine in *Guzhagin v. State Farm Mut. Auto. Ins. Co.* 566 F. Supp.2d 962 (D. Minn. 2008). *See also Auto Club Ins. Ass'n. et. al. v. Healthy Living Chiropractic Clinic, P.C. et. al* (11-CV-27-JRT/JSM).

75. Guzhagin has had actual or constructive knowledge of the Corporate Practice of Medicine Doctrine at all times material based upon the Minnesota Board of Chiropractic Examiners notice indicating that as of January 1, 1999, all owners and decision makers of professional firms must be comprised of persons licensed to practice the professions designated in Minnesota chapter 319B.

76. As a result of the knowing an intentional violation of the Corporate Practice of Medicine Doctrine, any and all billings and/or invoices are null, void, and

uncollectible.  Further, Plaintiffs are entitled to recover any and all payments issued to Defendants.

77.   Defendants Acute Care Chiropractic Clinic P.A., Arthur Guzhagin, Healthy Living Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., Najah Ibrahim, Southwest Management LLC, and St. Paul Wellness Clinic P.A. are jointly and severally liable for Plaintiffs' damages because the defendants acted in a common scheme and plan that resulted in damages to Plaintiffs.  *See* MINN. STAT. § 604.02, subd. 1(2) (2012).

78.   Plaintiffs have been damaged in an amount in excess of Seventy Five Thousand Dollars ($75,000.00), which is set forth with particularity in Exhibit A.

## COUNT III
### Declaratory Judgment Act – 28 U.S.C § 2201
Violation of Minnesota's Professional Firms Act
(All Defendants)

79.   Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 78 of the Complaint.

80.   A real, actual and justiciable controversy exists between the parties.  This Court has the jurisdiction to declare the rights and obligations of the parties pursuant to 28 U.S.C. § 2201.

81.   Minnesota has enacted the Minnesota Professional Firms Act (MPFA).  The MPFA authorizes firms to render professional services if the firm's organizational documents: (1) state that the firm elects to operate under Minn. Stat. ch. 319B; (2) acknowledge that the firm is subject to the chapter; and (3) identifies the categories of professional services that the firm is authorized to provide.  MINN. STAT. § 319B.03, subd. 2 (2012).

24

82. The United States District Court for the District of Minnesota has previously stated that a violation of the MPFA can serve as the basis for a violation of the Corporate Practice of Medicine Doctrine. *Spine Imaging v. Liberty Mutual*, 818 F. Supp. 2d 1133, 1140 (D. Minn. 2011).

83. Defendants Acute Care Chiropractic Clinic P.A., Healthy Living Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., and St. Paul Wellness Clinic P.A. have all made elections to operate under the Minnesota Professional Firms Act.

84. The MPFA addresses ownership interests. It states:

> **Subdivision 1. Ownership of interests restricted.**
> Ownership interests in a professional firm may not be owned or held, either directly or indirectly, except by any of the following:
>
> 1. Professionals who, with respect to at least one category of the pertinent professional services, are licensed and not disqualified;
> 2. General partnerships, other than limited liability partnerships, authorized to furnish at least one category of the professional firm's pertinent professional services;
> 3. Other professional firms authorized to furnish at least one category of the professional firm's pertinent professional services;
> 4. A voting trust established with respect to some or all of the ownership interests in the professional firm, if (i) the professional firm's generally applicable governing law permits the establishment of voting trusts, and (ii) all the voting trustees and all the holders of beneficial interests in the trust are professionals licensed to furnish at least one category of the pertinent professional services;

5. An employee stock ownership plan as defined in section 4975(e)(7) of the Internal Revenue Code of 1986, as amended, if (i) all the voting trustees of the plan are professionals licensed to furnish at least one category of the pertinent professional services, and (ii) the ownership interests are not directly issued to anyone other than professionals licensed to furnish at least one category of the pertinent professional services; and

6. Sole ownership by a surviving spouse of a deceased professional who was the sole owner of the professional firm at the time of the professional's death, but only during the period of time ending one year after the death of the professional.

85. Defendants Acute Care Chiropractic Clinic P.A., Healthy Living Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., and St. Paul Wellness Clinic P.A. violate the MPFA by issuing and/or authorizing legal or in-fact ownership interests to persons and/or limited liability companies, such as Najah Ibrahim and/or Southwest Management, not licensed to render at least one category of the pertinent professional services.

86. As health care providers and physicians, the chiropractors of Defendants Acute Care Chiropractic Clinic P.A., Healthy Living Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., and St. Paul Wellness Clinic P.A. should enjoy unfettered independent medical judgment without the interference of a lay corporation.

87. Defendants Acute Care Chiropractic Clinic P.A., Healthy Living Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., Southwest Management LLC, and St. Paul Wellness Clinic P.A. operate in violation of the

corporate practice of medicine doctrine in the State of Minnesota. This violation is knowing and intentional. Defendant Guzhagin knew of and made specific reference to the corporate practice of medicine doctrine in *Guzhagin v. State Farm Mut. Auto. Ins. Co.* 566 F. Supp.2d 962 (D. Minn. 2008). *See also Auto Club Ins. Ass'n. et. al. v. Healthy Living Chiropractic Clinic, P.C. et. al* (11-CV-27-JRT/JSM).

88.  Guzhagin has had actual or constructive knowledge of the Corporate Practice of Medicine Doctrine at all times material based upon the Minnesota Board of Chiropractic Examiners notice indicating that as of January 1, 1999, all owners and decision makers of professional firms must be comprised of persons licensed to practice the professions designated in Minnesota chapter 319B.

89.  As a result of the knowing and intentional violation of the Minnesota Professional Firms Act and corporate practice of medicine doctrine, any and all billings and/or invoices are null, void, and uncollectible. Further, Plaintiffs are entitled to recover any and all payments issued to Defendants.

90.  Defendants Acute Care Chiropractic Clinic P.A., Arthur Guzhagin, Healthy Living Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., Najah Ibrahim, Southwest Management LLC, and St. Paul Wellness Clinic P.A. are jointly and severally liable for Plaintiffs' damages because the defendants acted in a common scheme and plan that resulted in damages to Plaintiffs. *See* MINN. STAT. § 604.02, subd. 1(2) (2012).

91.  Plaintiffs have been damaged in an amount in excess of Seventy Five Thousand Dollars ($75,000.00), which is set forth with particularity in Exhibit A.

**COUNT IV**
**Unjust Enrichment**
(All Defendants)

92.  Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs

1 through 91 of the Complaint.

93.  Defendants Acute Care Chiropractic Clinic P.A., Arthur Guzhagin, Healthy Living

Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C.,

Najah Ibrahim, Southwest Management LLC, and St. Paul Wellness Clinic P.A. while

in direct violation of the Corporate Practice of Medicine Doctrine and Minnesota

Professional Firms Act, held Acute Care Chiropractic Clinic P.A., Healthy Living

Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C.,

and St. Paul Wellness Clinic P.A. out as legitimate providers of the healing arts and

obtained funds to which they were not entitled and which rightfully belonged to

Plaintiffs.

94.  It would be unjust to permit Defendants to retain these ill-gotten gains.

95.  Plaintiffs have been damaged in an amount in excess of Seventy Five Thousand

Dollars ($75,000.00), which is set forth with particularity in Exhibit A.

96.  Plaintiffs are entitled to a judgment requiring Defendants to disgorge the funds and

return them to Plaintiffs.

97.  Defendants Acute Care Chiropractic Clinic P.A., Arthur Guzhagin, Healthy Living

Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C.,

Najah Ibrahim, Southwest Management LLC, and St. Paul Wellness Clinic P.A. are

jointly and severally liable for Plaintiffs' damages because the defendants acted in a

common scheme and plan that resulted in damages to Plaintiffs.  *See* MINN. STAT. §

604.02, subd. 1(2) (2012).

**COUNT V**
**Recovery of Minnesota No-Fault Benefits**
**Minn. Stat. § 65B.54**
(Defendant Clinics)

98.   Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs

1 through 97 of the Complaint.

99.   Plaintiffs are reparation obligators as defined by the Minnesota No-Fault Automobile

Insurance Act.

100.   Defendants Acute Care Chiropractic Clinic P.A., Healthy Living Chiropractic Clinic

P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., and St. Paul Wellness

Clinic P.A. allegedly provided products or services for which basic economic loss

benefits were allegedly payable.

101.   The illegal submissions constitute intentional misrepresentations because Defendants

knowingly and intentionally concealed their lay ownership from Plaintiffs by

submitting deceptive invoices for services to Plaintiff.

102.   Plaintiffs relied on the submissions provided by Defendants and paid the claims.

103.   Plaintiffs have been damaged in an amount in excess of Seventy Five Thousand

Dollars ($75,000.00), which is set forth with particularity in Exhibit A.

104.   Defendants Acute Care Chiropractic Clinic P.A., Arthur Guzhagin, Healthy Living

Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C.,

Najah Ibrahim, Southwest Management LLC, and St. Paul Wellness Clinic P.A. are

jointly and severally liable for Plaintiffs' damages because the defendants acted in a

29

common scheme and plan that resulted in damages to Plaintiffs.  *See* MINN. STAT. §

604.02, subd. 1(2) (2012).

<u>COUNT VI</u>
**Violation of the Minnesota Consumer Protection Act**
**Minn. Stat. § 325F**
(Defendant Clinics)

105.  Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs

1 through 104 of the Complaint.

106.  Defendants Acute Care Chiropractic Clinic P.A., Healthy Living Chiropractic Clinic

P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., and St. Paul Wellness

Clinic P.A. were in the course of selling services such as chiropractic examination,

evaluation, and various treatment modalities.

107.  Defendants Acute Care Chiropractic Clinic P.A., Healthy Living Chiropractic Clinic

P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., and St. Paul Wellness

Clinic P.A. utilized false information and/or deceptive practices by representing to the

public that they were properly incorporated, properly owned, legitimate, and otherwise

lawful health care facilities.

108.  Defendants Acute Care Chiropractic Clinic P.A., Healthy Living Chiropractic Clinic

P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., and St. Paul Wellness

Clinic P.A. intended that others, such as Plaintiffs and its insureds, would rely on this

false information and/or deceptive practices.

109.  Plaintiffs relied upon Defendants Acute Care Chiropractic Clinic P.A., Healthy Living

Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C.,

and St. Paul Wellness Clinic P.A.'s false information and/or deceptive practices by paying insurance claims to which Plaintiffs had no duty to do based upon Defendants' illegal incorporation and ownership.

110.  Plaintiffs have legal authority to bring an action pursuant to chapter 325F pursuant to the Minnesota Private Attorney General statute.  *See* MINN. STAT. § 8.31, subd. 3a (2013).

111.  Plaintiffs have been damaged in an amount in excess of Seventy Five Thousand Dollars ($75,000.00), which is set forth with particularity in Exhibit A.

112.  Defendants Acute Care Chiropractic Clinic P.A., Healthy Living Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., and St. Paul Wellness Clinic P.A. are jointly and severally liable for Plaintiffs' damages because the defendants acted in a common scheme and plan that resulted in damages to Plaintiffs. *See* MINN. STAT. § 604.02, subd. 1(2) (2012).

## COUNT VII
### Common Law Fraud
(All Defendants)

113.  Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 112 of the Complaint.

114.  Defendants falsely represented directly and/or indirectly that the services it performed for Plaintiffs' insureds were legal and proper.  Defendants' representations were effectuated by the presentation of demands for payment with associated billing records.  These representations were material because the information submitted to

Plaintiffs was facially valid and largely determined whether Plaintiffs would voluntarily issue payment.

115. Defendants knew that its operation was in violation of the corporate practice of medicine doctrine and Minnesota Professional Firms Act at all times material.

116. Plaintiffs did rely upon the false and misleading billing records submitted to them and did in fact issue payments.

117. Plaintiffs were harmed as a direct result of relying on the false representations of the defendants.

118. Plaintiffs have been damage in an amount in excess of Seventy Five Thousand Dollars ($75,000.00), which is set forth with particularity in Exhibit A.

119. Defendants Acute Care Chiropractic Clinic P.A., Arthur Guzhagin, Healthy Living Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., Najah Ibrahim, Southwest Management LLC, and St. Paul Wellness Clinic P.A. are jointly and severally liable for Plaintiffs' damages because the defendants acted in a common scheme and plan that resulted in damages to Plaintiffs.  *See* MINN. STAT. § 604.02, subd. 1(2) (2012).

<u>**COUNT VIII**</u>
**Negligent Misrepresentation**
(All Defendants)

120. Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 119 of the Complaint.

121. During the course of their business operations, and in which defendants had a financial interest, Defendants supplied false information to Plaintiffs to guide them in their own

business transactions in making a determination as to whether services performed by the defendants were compensable services.

122. Defendants failed to use reasonable care or competence in communicating billing information to Plaintiffs because the defendants failed to disclose that they were layowned, operating in violation of the Corporate Practice of Medicine Doctrine, operating in violation of the Minnesota Professional Firms Act, and that the bills were otherwise void as a matter of public policy.

123. Plaintiffs reasonably relied on the billing documentation because the bills appeared to be facially valid.

124. Plaintiffs were harmed by their reliance on the information submitted by the defendants.

125. Defendants Acute Care Chiropractic Clinic P.A., Arthur Guzhagin, Healthy Living Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., Najah Ibrahim, Southwest Management LLC, and St. Paul Wellness Clinic P.A. are jointly and severally liable for Plaintiffs' damages because the defendants acted in a common scheme and plan that resulted in damages to Plaintiffs.  *See* MINN. STAT. § 604.02, subd. 1(2) (2012).

**WHEREFORE,** Plaintiffs respectfully prays that the Court enter judgment in its favor against Defendants as follows:

1. An amount in excess of Seventy Five Thousand Dollars ($75,000.00), as set forth with particularity in Exhibit A, plus treble damages, attorney fees, and costs pursuant to 18 U.S.C. § 1964(c) and/or at state common law.

2. A declaration that Acute Care Chiropractic Clinic P.A., Arthur Guzhagin, Healthy Living Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., Najah Ibrahim, Southwest Management LLC, and St. Paul Wellness Clinic P.A. have operated and continue to operate Acute Care Chiropractic Clinic P.A., Healthy Living Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., and St. Paul Wellness Clinic P.A. in violation of the Corporate Practice of Medicine Doctrine and Minnesota Professional Firms Act according to the law of the State of Minnesota.

3. A permanent injunction enjoining Acute Care Chiropractic Clinic P.A., Arthur Guzhagin, Healthy Living Chiropractic Clinic P.C., Lake Nicollet Clinic P.A., Midwest Chiropractic Clinic P.C., Najah Ibrahim, Southwest Management LLC, and St. Paul Wellness Clinic P.A. from further violations of the corporate practice of medicine doctrine and Minnesota Professional Firms Act.

4. A declaration that any and all outstanding balances purported owed by Plaintiffs to Defendants are void and uncollectible due to Defendants' knowing and intentional violation of the corporate practice of medicine doctrine.

5.  Any such other and further relief as the Court deems just and proper.


Dated: July 2, 2014                    **LAW OFFICES OF THOMAS P. STILP**

                                       /s/ Bryan J. Chant
                                       _____
                                       Bryan J. Chant (Minn. Bar No. 388232)
                                       Travis J. Adams (Minn. Bar No. 395240)
                                       701 Xenia Avenue South, Suite 220
                                       Golden Valley, MN 55416
                                       Tel.:  763-546-8444
                                       Fax:  866-858-9836
                                       E-Mail:  bryan.chant@libertymutual.com
                                       E-Mail:  travis.adams@libertymutual.com

                                       ATTORNEYS    FOR    PLAINTIFFS
                                       LIBERTY MUTUAL FIRE INSURANCE
                                       COMPANY,    LM    INSURANCE
                                       CORPORATION,    LM    GENERAL
                                       INSURANCE   CORPORATION,   THE
                                       FIRST    LIBERTY    INSURANCE
                                       CORPORATION, SAFECO INSURANCE
                                       COMPANY   OF   INDIANA,   AND
                                       SAFECO  INSURANCE  COMPANY  OF
                                       ILLINOIS